DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Eastminster Presbytery ("Eastminster"), appeals from the judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of Plaintiff-Appellee, Hudson Presbyterian Church ("HPC"). This Court affirms.
 I {¶ 2} HPC incorporated and filed its articles of incorporation with the Ohio Secretary of State in the summer of 1982. In listing the purposes for the formation of the organization, HPC's original articles of incorporation provided, in part, as follows:
 "To voluntarily associate together for divine worship and godly living, agreeably to the Holy Scriptures, submitting to the authority and form of government as set forth in the Constitution (as amended) of the United Presbyterian Church in the United States of America, and under the further authority of Eastminster Presbytery." *Page 2 
 {¶ 3} HPC's original bylaws further provided that "[HPC] being a particular congregation of the Presbyterian Church (U.S.A.) recognizes that the Constitution of said Church, is in all its provisions, obligatory upon it and its members."[1]
 {¶ 4} In 1983, the Presbyterian Church (U.S.A.) merged with the United Presbyterian Church in the U.S.A. and retained the name Presbyterian Church (U.S.A.). The entity adopted the United Presbyterian Church in the U.S.A.'s constitution, partially comprised of the Book of Order, which was amended on May 23, 1981 to substitute the Presbyterian Church (U.S.A.)'s name for any references to the United Presbyterian Church in the U.S.A. Through the merger, Eastminster, a presbytery of the United Presbyterian Church in the U.S.A., became the local, representative entity for HPC in the Presbyterian Church (U.S.A.).
 {¶ 5} In the fall of 2006, HPC's governing body and congregation voted to disaffiliate from the Presbyterian Church (U.S.A.) and its local, representative entity, Eastminster. As a part of its disaffiliation, HPC sought to retain certain personal and real property, the most predominant of which was its church building and the surrounding land. The real property at issue was granted to HPC and recorded by warranty deed on December 15, 1982. Eastminster, however, claimed that HPC held the real property in trust for the Presbyterian Church (U.S.A.) and sought to prevent HPC's retention of the property and HPC's disaffiliation. Eastminster *Page 3 
alleged that by joining the Presbyterian Church (U.S.A.), HPC agreed to hold all of its property in trust for the benefit of the church and to submit to the Presbyterian Church (U.S.A.)'s authority.
 {¶ 6} On September 28, 2006, HPC filed a declaratory judgment action seeking a declaration that HPC could disaffiliate from Eastminster based on their voluntary affiliation and the fact that HPC's church property was unencumbered and belonged solely to HPC. Eastminster filed a counterclaim for declaratory judgment seeking a declaration that HPC could not unilaterally disaffiliate and that HPC held its church property in trust for the benefit of the Presbyterian Church (U.S.A.). On December 12, 2006, Eastminster moved the court to join the Ohio Attorney General as a necessary party in a proceeding involving the construction of a charitable trust pursuant to R.C. 109.25.[2]
 {¶ 7} On April 16, 2007, the parties filed a "Notice of Filing Joint Exhibits." The notice indicated that the parties gave their joint exhibits directly to the magistrate, but that "[d]ue to the volume of the Joint Exhibits, no set [was] filed with the Clerk of Courts."[3]
The same day, both HPC and Eastminster filed respective motions for summary judgment. On October 23, 2007, the magistrate issued his decision granting summary judgment in favor of HPC on both its claim and on Eastminster's counterclaim. The magistrate determined that HPC could voluntarily disassociate from the Presbyterian Church (U.S.A.) and retain ownership of all of its assets, including the real property. *Page 4 
 {¶ 8} Subsequently, Eastminster filed objections to the magistrate's decision. On May 23, 2008, the trial court issued its order overruling Eastminster's objections and entering a declaratory judgment in HPC's favor. Eastminster now appeals from the trial court's order and raises four assignments of error for our review. For ease of analysis, we rearrange several of the assignments of error.
 II Assignment of Error Number Four "THE COURT ERRED IN INTERVENING IN CHURCH POLITY AND ECCLESIASTICAL MATTERS WHEN IT ALLOWED HPC TO UNILATERALLY DISAFFILIATE AND TAKE ENTRUSTED PROPERTY WITH IT[.]"
 {¶ 9} In its fourth assignment of error, Eastminster argues that the trial court erred in exercising jurisdiction over this matter. Specifically, Eastminster argues that the dispute at issue is ecclesiastical in nature and, therefore, not within the jurisdiction of a secular court. We disagree.
 {¶ 10} "It is well-settled that American courts will steadfastly decline to interfere in church disputes over doctrinal or spiritual matters." Winston v. Second Baptist Missionary Church of Lorain (Sept. 10, 1997), 9th Dist. No. 96CA006588, at *2. A court may decide a church dispute, however, if it does not require that the court "delve into areas of church dogma" or interpret doctrinal beliefs. Id. A court may exercise its jurisdiction over a church dispute if it is able to resolve the dispute by employing neutral principles of law. See id. (upholding court's conclusion that church breached its constitution in electing a reverend based on the court's neutral and secular reading of the church's constitution); Jones v. Wolf (1979), 443 U.S. 595, 602-04
(espousing rights of States to determine church property disputes based on "neutral principles of law"); State ex rel. Morrow v. Hill (1977),51 Ohio St.2d 74, 80 (upholding court's *Page 5 
decision regarding local church's affiliation with national church based on consideration of "purely factual matters *** [unrelated to] religious doctrines, tenets or practices"); Serbian Orthodox Church ofCongregation of St. Demetrius of Akron v. Kelemen (1970),21 Ohio St.2d 154, 158, 162 (remanding for a neutral law inquiry to determine whether church had right to its name and certain property).
 {¶ 11} In citing multiple reasons as to why HPC's "efforts to disaffiliate and misappropriate entrusted property were illegal and void[,]" Eastminster merely espouses various bases for disagreeing with the trial court's decision. Eastminster declares without explanation that the trial court's exercise of jurisdiction "patently violated the First Amendment" because it decided matters "expressly governed by church polity." While Eastminster mentions the neutral principles of law doctrine, it does so only to specify that the doctrine does not apply "to religious controversies in the areas of church government, order and discipline[.]" Hutchinson v. Thomas (6th Circ. 1986), 789 F.2d 392, 396. Eastminster fails to explain why this matter constitutes such a nonjusticiable religious controversy. See App. R. 16(A)(7) (providing that an appellant bears the burden of demonstrating error on appeal). The fact that a trial court's decision will have implications for a religious entity is not a per se indication that the trial court lacks jurisdiction over the matter. See Winston, at *2. Eastminster's fourth assignment of error is overruled.
 Assignment of Error Number One "THE TRIAL COURT ERRED IN EXCLUDING THE 1981 BOOK OF ORDER AND REFUSING TO CONSIDER ITS TRUST PROVISION[.]"
 {¶ 12} In its first assignment of error, Eastminster argues that the trial court erred in excluding one of its exhibits and in concluding that the best evidence rule barred the admission of other evidence reiterating the language contained in the exhibit. We disagree. *Page 6 
 {¶ 13} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produced a material prejudice to the aggrieved party. State v. Roberts,156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 14} As part of the joint exhibit binder that the parties submitted with their respective motions for summary judgment, Eastminster included Exhibit 150. The exhibit consisted of a single photocopied page, which was entitled "Chapter XLII Of Property" and contained several paragraphs. One of the paragraphs provided as follows:
 "All property held by or for a particular church, *** whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of the particular church or of a more inclusive judicatory or retained for the production of income, is held in trust nevertheless for the use and benefit of The United Presbyterian Church in the United States of America."
The table of contents at the beginning of the joint exhibit binder indicated that Exhibit 150 consisted of "UPCUSA Book of Order (excerpts from 5/23/81, G.XLII Sec. 72.02 and 72.03)." One of Eastminster's affidavits in support of its motion for summary judgment, the affidavit of Reverend Mark A. Tammen, also contained the above-quoted paragraph and indicated that it was included in the United Presbyterian Church in the U.S.A.'s 1981 Book of Order.
 {¶ 15} The trial court determined that Eastminster failed to submit admissible evidence of the 1981 Book of Order's contents. Furthermore, the court refused to consider Eastminster's *Page 7 
affidavits as evidence of the content of Exhibit 150 because the affidavits did not constitute the best evidence of the 1981 Book of Order and Eastminster failed to set forth any exception to the best evidence rule. Eastminster argues that the trial court erred in excluding its exhibit because: (1) HPC never challenged either the authenticity or admissibility of Exhibit 150; (2) the parties essentially stipulated to Exhibit 150 at a March 28, 2007 hearing before the magistrate, and the stipulation was binding on the trial court; (3) the trial court refused to allow Eastminster to supplement the record with a complete copy of the 1981 Book of Order in order to remedy any defects in Exhibit 150; and (4) "even inadmissible evidence should be considered" at the summary judgment stage.
 {¶ 16} The absence of any challenge to Exhibit 150 on the part of HPC had no bearing on the trial court's ability to strike the exhibit because a "trial court maintains the discretion to sua sponte exclude or admit evidence." State v. Southala Chandathany, 9th Dist. No. 02CA0081-M, 2003-Ohio-1593, at ¶ 5, fn.1. Moreover, the record does not support Eastminster's assertion that the parties entered into a binding stipulation with regard to the exhibits. At a March 28, 2007 hearing before the magistrate, HPC's attorney responded to the magistrate's inquiry about the status of discovery as follows:
 "Your Honor, what we've discussed so far is essentially stipulating to the authenticity of documents. And right now this appears to be the binder of documents that we will be submitting. With all due apologies to the court, we got about 120 documents."
Apart from the tenuous conclusion that an "essential[] stipulation]" to authenticity equates to a comprehensive and binding stipulation, HPC's attorney indicated that they had approximately 120 documents in the binder of documents to be submitted. The parties' joint exhibit binder ultimately contained over 160 exhibits. It is unclear which of the exhibits the parties already had at the time they appeared before the magistrate and which exhibits they collected after the *Page 8 
hearing. Accordingly, the record does not support Eastminster's conclusion that the parties stipulated to all of the exhibits. The trial court had the discretion to conclude that the parties did not stipulate to Exhibit 150 and to consider Exhibit 150's admissibility sua sponte. Id.
 {¶ 17} There also is no indication that the trial court abused its discretion by refusing to allow Eastminster to provide it with additional evidence. Civ. R. 53(D)(4)(d) provides, in relevant part, that:
 "In ruling on objections [to a magistrate's decision], the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that [it] could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." (Emphasis added.)
After the magistrate issued his decision, Eastminster sought to supplement the parties' joint exhibit binder. One of the supplements Eastminster sought to admit was a cover page for Exhibit 150 so as to identify it as an excerpt from the 1981 Book of Order. During a November 9, 2006 hearing before the magistrate, HPC expressed its difficulty in obtaining a copy of the 1981 Book of Order. Eastminster responded by promising to provide HPC with a complete copy of the 1981 Book of Order. Accordingly, Eastminster had a complete copy of the 1981 Book of Order, which would have included the date of its publication, and apparently decided not to include it as part of Exhibit 150. It did not attempt to do so until after the magistrate issued his decision in favor of HPC. Based on the availability of the additional evidence and Eastminster's delay in seeking its admission, we cannot say that the trial court abused its discretion in refusing to permit Eastminster to supplement Exhibit 150. See id. See, also, Toth v. Toth, 6th Dist. No. OT-05-006,2005-Ohio-7001, at ¶ 23-25. *Page 9 
 {¶ 18} The trial court did not abuse its discretion in refusing to consider Exhibit 150 for purposes of summary judgment. Civ. R. 56(C) limits the type of evidence that a trial court may consider in determining whether a party is entitled to summary judgment. If a party wishes to rely on a piece of evidence excluded from Civ. R. 56(C)'s exclusive list, the evidence must be incorporated by reference through a properly framed affidavit. Rutkai v. Freeland, 9th Dist. No. 24267,2008-Ohio-6440, at ¶ 7; Civ. R. 56(E). Exhibit 150, a single page photocopy, did not constitute one of the listed Civ. R. 56(C) materials. As such, Exhibit 150's admission depended upon its incorporation by reference through a properly framed affidavit. Civ. R. 56(E). Although Reverend Tammen's affidavit quoted part of the same material contained in Exhibit 150, the affidavit did not refer to Exhibit 150. Consequently, Eastminster failed to incorporate the content of Exhibit 150, the 1981 Book of Order, by reference.[4] The trial court was under no obligation to consider Exhibit 150. See Richardson v.Auto-Owners Mut. Ins. Co., 9th Dist. No. 21697, 2004-Ohio-1878, at ¶ 29 (providing that trial court has discretion whether to consider improper Civ. R. 56 evidence).
 {¶ 19} Finally, we cannot agree that the trial court abused its discretion by concluding that Eastminster could not rely upon Reverend Tammen's affidavit as a substitute for the content of Exhibit 150. This Court has held that "[e]vidence submitted with a motion for summary judgment is proper only `if the evidence is admissible at trial.'"Nationwide Life Ins. v. Kallberg, 9th Dist. No. 06CA008968,2007-Ohio-2041, at ¶ 20, quoting McPherson v. Goodyear Tire RubberCo., 9th Dist. No. 21499, 2003-Ohio-7190, at ¶ 7. Evid. R. 1002, the Best Evidence Rule, *Page 10 
provides that "[t]o prove the content of a writing, *** the original writing *** is required, except as otherwise provided in these rules[.]" Evid. R. 1004 contains a list of various exceptions to the Best Evidence Rule, whereby a party may introduce other evidence to prove the content of a writing. Eastminster failed to explain why it was necessary to rely on Reverend Tammen's affidavit to prove the content of the 1981 Book of Order. Indeed, Eastminster indicated during a November 9, 2006 hearing that it at least had a copy of the entire 1981 Book of Order in its possession. The trial court did not abuse its discretion in refusing to consider Reverend Tammen's affidavit as evidence of the content of the 1981 Book of Order based on Eastminster's failure to comply with the Best Evidence Rule. Eastminster's first assignment of error is overruled.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN FAILING TO FIND A TRUST FOR THE [PRESBYTERIAN CHURCH U.S.A.] BASED ON THE EXTENSIVE EVIDENCE IN THE RECORD[.]"
 {¶ 20} In its second assignment of error, Eastminster argues that the trial court erred in determining that HPC did not hold its church property in trust for the Presbyterian Church (U.S.A.). Specifically, Eastminster argues that the trial court erred in failing to conclude that the Presbyterian Church (U.S.A.)'s constitution created an express trust that governed HPC's property. We disagree.
 {¶ 21} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12. *Page 11 
 {¶ 22} Pursuant to Civ. R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ. R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 23} Eastminster argues that HPC agreed to abide by the Presbyterian Church (U.S.A.)'s constitution, contained in its Book of Order, and that the constitution contained an express trust. Eastminster relies upon the United States Supreme Court decision in Jones v. Wolf (1979),443 U.S. 595, to argue that an express trust governed HPC's property. InJones, the Court held that:
 "Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. At any time before the dispute erupts, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such steps will be minimal. And the civil courts will be bound to give effect to the result indicated *Page 12 
by the parties, provided it is embodied in some legally cognizable form" (Emphasis added.) Jones, 443 U.S. at 606.
Accordingly, Jones sanctioned the use of an express trust in a church constitution as a means of securing the ownership of church property, but specified that the trust would have to be "embodied in some legally cognizable form." Id.
 {¶ 24} In Ohio, "[e]xpress trusts arise by a manifested intent, either written or oral, to create a trust." Levens Corp. v. Aberth (Feb. 10, 1993), 9th Dist. No. 15661, at *6, citing Peterson v. Teodosio (1973),34 Ohio St.2d 161, 172. The elements of a trust are as follows:
 "[T]o constitute an express trust there must be an explicit declaration of trust, *** accompanied with an intention to create a trust, followed by an actual conveyance or transfer of lawful, definite property or estate or interest, made by a person capable of making a transfer thereof, for a definite term, vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a cestui que trust or purpose to which the trust fund is to be applied; or a retention of title by the owner under circumstances which clearly and unequivocally disclose an intent to hold for the use of another." Hatch v. Lallo (Mar. 27, 2002), 9th Dist. No. 20642, at *1, quoting Ulmer v. Fulton (1935), 129 Ohio St. 323, 339-40.
Unless the settlor and the trustee of a trust are the same person or entity, the mere assertion that property is held in trust, without the transfer of the legal interest or title to the property, cannot create an express trust. Hatch, at *2.
 {¶ 25} The trial court determined that Eastminster failed to demonstrate that an express trust existed because it did not supply the court with evidence of the church's constitution as it existed at HPC's inception. Jones provides, however, that an express trust may be created "[a]t any time before [a] dispute erupts." Jones, 443 U.S. at 606. Accordingly, Eastminster was not required to prove that an express trust provision existed at the time of HPC's inception. Despite the trial court's error, however, this Court may affirm a trial court's ultimate decision on separate *Page 13 
grounds if such grounds exist. See, e.g., Phillips v. Cochrum, 9th Dist. No. 23349, 2007-Ohio-247.
 {¶ 26} Eastminster argues that HPC "was bound by the express trust clauses in the 1983 and 2005 Books of Order." Eastminster avers that the trial court "failed to consider the trust clauses in the 1983 or 2005 Books of Order at all" because it did not mention either trust clauses in its order granting HPC summary judgment. Yet, Eastminster's evidence of the 1983 and 2005 Books of Order suffers from the same defects as its evidence of the 1981 Book of Order. That is, the Books are not Civ. R. 56(C) evidence, and there is no indication that Eastminster incorporated the Books by reference through one or more properly framed affidavits.Rutkai at ¶ 7; Civ. R. 56(E). Accordingly, we agree with the court's ultimate determination, that Eastminster failed to prove an express trust, based on a separate ground: that Eastminster did not introduce admissible evidence of the Presbyterian Church (U.S.A.)'s constitution.[5] See Phillips, supra. See, also, Hatch, at *1 (requiring an express declaration of trust as part of the formation of an express trust). Eastminster's second assignment of error is overruled.
 Assignment of Error Number Three "THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT HPC HELD ITS PROPERTY FREE FROM A CHARITABLE TRUST[.]"
 {¶ 27} In its third assignment of error, Eastminster argues that the trial court erred in determining that HPC did not hold its property in a charitable trust for the benefit of the *Page 14 
Presbyterian Church (U.S.A.). Specifically, Eastminster argues that the Presbyterian Church (U.S.A.)'s contributions to HPC created a charitable trust within the meaning of R.C. 109.23.
 {¶ 28} In reviewing a trial court's decision to overrule a party's objections to a magistrate's recommendation for summary judgment and to enter summary judgment on behalf of one of the parties, this Court looks to the arguments and evidence that the parties presented at the summary judgment stage. See, e.g., Midland Funding LLC-MFL v.Halberg-Weiss, 9th Dist. No. 23461, 2007-Ohio-3241, at ¶ 5-11;Community Health Partners v. Med. Mut. of Ohio, 9th Dist. No. 05CA008693, 2005-Ohio-6913, at ¶ 4-17. The record reflects that Eastminster's motion for summary judgment is devoid of any argument that HPC held its property in a charitable trust. Rather, the Attorney General argued that a charitable trust existed. Eastminster's objection to the magistrate's decision on this matter provided, in relevant part, as follows:
 "[T]he Magistrate concluded, without explanation or analysis, that the State's position regarding the existence of a charitable trust was without merit. Accordingly, the Magistrate's Decision erred as a matter of law in denying the State of Ohio's motion for summary judgment. Eastminster supports the State's Objections and Memorandum in Support herein to support this objection."
Eastminster may not rely upon the Attorney General's motion as a means of preserving an argument that it failed to make on its own behalf. Because it failed to raise any charitable trust argument in its own motion for summary judgment, Eastminster cannot now raise this argument on appeal. See White v. Summa Health System, 9th Dist. No. 24282,2008-Ohio-6790, at ¶ 24. Eastminster's third assignment of error is overruled.
 III {¶ 29} Eastminster's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed. *Page 15 
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
BETH WHITMORE FOR THE COURT
MOORE, P. J., DICKINSON, J., CONCUR
[1] It is unclear to this Court why HPC's original articles of incorporation pledge HPC's allegiance to one entity (the United Presbyterian Church in the United States of America) and its bylaws pledge HPC's alliance to another entity (the Presbyterian Church (U.S.A.)). Although the United Presbyterian Church in the United States of America and the Presbyterian Church (U.S.A.) merged in 1983, they had yet to do so at the time that HPC filed its articles of incorporation and bylaws. Further, neither of the parties' briefs clarify this discrepancy. Both parties on appeal agree, however, that the two Presbyterian Churches merged and that HPC agreed to join with the surviving entity (the Presbyterian Church (U.S.A.)). Accordingly, this lack of clarity has no impact on the holding of this Court.
[2] Although joined as a party in the proceedings below, the Ohio Attorney General is not a party on appeal.
[3] With leave of court, the parties later filed their joint exhibits with the clerk so as to make the exhibits part of the record.
[4] Although Exhibit 157, the affidavit of Reverend Meta Cramer, attested to the authenticity of the 1981 Book of Order "[a]ttached hereto, as Exhibit `A'" Eastminster failed to attach any "Exhibit A" to Cramer's affidavit. Further, Cramer's affidavit was not notarized.
[5] To the extent that Eastminster argues that various affidavits it provided attest to the content of the 1983 and 2005 Book of Order, we note that these affidavits also suffer from the same defects as Reverend Tammen's affidavit attesting to the 1981 Book of Order. That is, they are not the best evidence of the Books. See Kallberg at ¶ 20 (noting that the propriety of summary judgment evidence depends in part upon its admissibility at trial). *Page 1