[Cite as *Eastminster Presbytery v. Stark & Knoll*, 2012-Ohio-900.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

EASTMINSTER PRESBYTERY

    Appellant

    v.

STARK & KNOLL

    Appellee

C.A. No.     25623

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009-07-5332

DECISION AND JOURNAL ENTRY

Dated: March 7, 2012

---

CARR, Judge.

{¶1}    Appellant, the Eastminster Presbytery of the Presbyterian Church USA, appeals the order of the Summit County Court of Common Pleas that granted summary judgment to Appellee, Stark & Knoll, L.P.A., and individual attorneys associated with the firm. We affirm.

I.

{¶2}    Hudson Presbyterian Church ("HPC") disaffiliated from the Presbyterian Church USA ("PCUSA") in 2006. HPC filed a declaratory judgment action in the Summit County Court of Common Pleas and Eastminster, the presbytery within which the church was located, filed a counterclaim on behalf of the PCUSA. Both sought a declaration regarding ownership of the building and land owned by HPC. Eastminster argued that HPC actually held the property in trust for the denomination; HPC maintained that it held the property free of any claim from the denomination and could disaffiliate accordingly. The trial court granted summary judgment to HPC, and Eastminster appealed. This Court affirmed the judgment in *Hudson Presbyterian*

*Church v. Eastminster Presbytery*, 9th Dist. No. 24279, 2009-Ohio-446. The Ohio Supreme Court declined jurisdiction over Eastminster's appeal.

{¶3}     Eastminster filed an action for legal malpractice against the law firm of Stark & Knoll and the individual attorneys who represented it in the declaratory judgment case. It argued, among other things, that had counsel included within its summary judgment exhibits a complete, authenticated copy of the PCUSA's 1981 Book of Order, the trial court would have reached the conclusion that the church's property was in fact held in trust. The trial court granted summary judgment to Stark & Knoll and to the individual attorneys who were named as defendants, and Eastminster appealed. Its two assignments of error raise related issues, and so they are consolidated for purposes of analysis.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING AS A MATTER OF LAW THAT APPELLANT COULD NOT ESTABLISH THAT APPELLEES' NEGLIGENCE PROXIMATELY CAUSED ANY DAMAGE TO PLAINTIFF.

### ASSIGNMENT OF ERROR II

THE U.S. CONST. AMEND. I REQUIRED THE TRIAL COURT TO GIVE BINDING EFFECT TO THE BOOK OF ORDER'S EXPRESS TRUST CLAUSE.

{¶4}     In its first assignment of error, Eastminster has argued that the trial court erred in granting summary judgment to Stark & Knoll based on the legal conclusion that, even assuming negligence on the part of Stark & Knoll, Eastminster would not have obtained a better result in the underlying case absent its attorneys' actions. Specifically, Eastminster argues that the trial court incorrectly determined that the PCUSA's 1981 Book of Order was insufficient to demonstrate the existence of a trust without evidence of HPC's intention.

{¶5} Under Civ.R. 56(C), "[s]ummary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, at ¶ 10. This Court reviews an order granting summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶6} A claim of legal malpractice requires the plaintiff to prove that the attorney owed a duty to the plaintiff, that the attorney breached that duty and failed to conform to the standard of care, and that the failure proximately caused damages to the plaintiff. *See Vahila v. Hall*, 77 Ohio St.3d 421 (1997), syllabus. As a general rule, "the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case * * * [and] a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim." *Id*. at 427-428. Nonetheless, the Ohio Supreme Court has rejected universal application of the "case-within-a-case" doctrine, concluding that "the element of causation * * * [cannot] be replaced or supplemented with a rule of thumb requiring that a plaintiff, in order to establish damage or loss, prove in every instance that he or she would have been successful in the underlying matter(s) giving rise to the complaint." *Id*. at 428.

{¶7} The "case-within-a-case" doctrine, however, remains relevant in cases when "the theory of [the] malpractice case places the merits of the underlying litigation directly at issue." *See Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, at ¶ 18. In order to prove causation in these cases, the plaintiff must prove that but

for the attorney's conduct, the plaintiff would have obtained a better outcome in the underlying case. *Id*. at ¶ 19. In doing so,

> All the issues that would have been litigated in the previous action are litigated between the plaintiff and the plaintiff's former lawyer, with the latter taking the place and bearing the burdens that properly would have fallen on the defendant in the original action. Similarly, the plaintiff bears the burden the plaintiff would have borne in the original trial[.]

Restatement of the Law 3d, Law Governing Lawyers 390, Section 53, Comment b (2000).

{¶8} Eastminster's claim puts the merits of the underlying case directly at issue: it maintains that, but for counsel's failure to include a complete and properly authenticated copy of the 1981 Book of Order as an exhibit in support of its motion for summary judgment, it would have prevailed in the underlying case. Consequently, we must consider whether the result of the underlying case would have been different in order to determine whether the element of proximate cause has been established in this case.

{¶9} The trial court adopted our statement of the law in *Hudson Presbyterian Church*, 2009-Ohio-446, as its framework for analyzing whether Eastminster could have prevailed in the underlying case and, consequently, whether negligence on the part of Stark & Knoll proximately caused injury to Eastminster. The context of our opinion in *Hudson Presbyterian Church* is significant in this discussion. In the underlying case, the trial court concluded that under Ohio law, Eastminster was required to prove all of the elements of an express trust. The trial court then examined two of the conclusions reached by the magistrate. The court disagreed with the magistrate that there was no evidence of the existence of the 1981 Book of Order, but nevertheless concluded that its contents were not before the court in a manner contemplated by Civ.R. 56. The court agreed with the magistrate that HPC's articles of incorporation permitted voluntary dissociation from the PCUSA and did not evidence an intent to place the church's

property in trust for the denomination. Significantly, the trial court concluded that either of the magistrate's conclusions in these respects "were sufficient in themselves to grant Summary Judgment on [HPC's] behalf." Thus, even aside from the evidentiary problems surrounding the 1981 Book of Order, the trial court concluded that summary judgment should be granted to HPC on the independent basis that its own articles of incorporation did not demonstrate the intent to create a trust benefiting PCUSA.

{¶10} On appeal, Eastminster argued that "the trial court erred in failing to conclude that the Presbyterian Church (U.S.A.)'s constitution created an express trust that governed HPC's property." *Hudson Presbyterian Church*, 2009-Ohio-446, at ¶ 20. This Court affirmed the trial court's judgment "that Eastminster failed to prove an express trust" because "Eastminster did not introduce admissible evidence of the Presbyterian Church (U.S.A.)'s constitution." *Id.* at ¶ 26. Although this Court did not explicitly address whether HPC would have been entitled to summary judgment had the Book of Order been admitted, our opinion set forth a legal framework consistent with the trial court's analysis:

In *Jones v. Wolf* (1979), 443 U.S. 595, the Court held that:

'Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. At any time before the dispute erupts, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such steps will be minimal. And the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form.'

Accordingly, *Jones* sanctioned the use of an express trust in a church constitution as a means of securing the ownership of church property, but specified that the trust would have to be 'embodied in some legally cognizable form.'

"In Ohio, '[e]xpress trusts arise by a manifested intent, either written or oral, to create a trust.' The elements of a trust are as follows:

'[T]o constitute an express trust there must be an explicit declaration of trust, * * * accompanied with an intention to create a trust, followed by an actual conveyance or transfer of lawful, definite property or estate or interest, made by a person capable of making a transfer thereof, for a definite term, vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a cestui que trust or purpose to which the trust fund is to be applied; or a retention of title by the owner under circumstances which clearly and unequivocally disclose an intent to hold for the use of another.'

Unless the settlor and the trustee of a trust are the same person or entity, the mere assertion that property is held in trust, without the transfer of the legal interest or title to the property, cannot create an express trust.

(Internal citations omitted.) *Hudson Presbyterian Church*, 2009-Ohio-446, at ¶ 23-24.

**{¶11}** Central to the legal analysis of this dispute is the meaning of the language used by the United States Supreme Court when it noted that when the parties to a hierarchical church relationship seek to avoid property disputes by including a recitation of an express trust in the constitution of the denomination, "civil courts will be bound to give effect to the result indicated by the parties, *provided it is embodied in some legally cognizable form*." (Emphasis added.) *Jones v. Wolf*, 443 U.S. 595, 606 (1979). Notably, the Supreme Court made this statement in the context of affirming the "neutral principles" approach to property disputes that it espoused in an earlier case, *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969). In that case, the Court held that courts could not entangle themselves in ecclesiastical matters by determining which faction in a church dispute remained faithful to church doctrine, but nonetheless concluded that property disputes could be resolved by resort to neutral principles of property law. *Id*. at 449. As the Court observed, "[c]ivil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *Id*.

{¶12} Soon after the Supreme Court articulated the "neutral principles" doctrine, the Ohio Supreme Court considered how church property cases should be analyzed in Ohio. In *Serbian Orthodox Church Congregation of St. Demetrius of Akron v. Kelemen*, 21 Ohio St.2d 154 (1970), the Court looked to the "ordinary indicia of property rights" under Ohio law. *Id*. at 160. The Court rejected "recognition of an implied-trust theory of real property when a local church joins a church hierarchy[,]" and looked instead to the manifest expression of the parties' intent in the articles of incorporation of the local congregation, the recorded deeds, and instruments of conveyance, if any. *See id*.

{¶13} Although the U.S. Supreme Court decided *Jones* ten years later, the result in *Kelemen* is entirely consistent with that opinion. The issue squarely before the Court in *Jones* was not what evidence would be sufficient in every case to establish the existence of a trust, but whether the lower court applied the neutral principles doctrine in a constitutional manner when it determined which of two factions constituted the local church body at issue and to what extent the lower court could rely on ecclesiastical documents. *Jones*, 443 U.S. at 606-609. Significantly, the background for the Court's analysis was Georgia law, which recognized implied trusts in this context. *See id*. at 600.

{¶14} Thus, while *Jones* firmly established the neutral principles doctrine and provided guidance with respect to the extent to which courts may look to church documents in resolving property disputes, it neither set a uniform standard for how such cases should be analyzed nor required deference to ecclesiastical documents. Instead, it left the matter of what constitutes a "legally cognizable form" for trusts to determination under state law. *Jones*, 443 U.S. at 606. In this respect, Ohio law is well-established: any trust established between church bodies in a hierarchical relationship must be express, not implied, and the existence of the trust must be

established by clear and convincing evidence. *See Kelemen*, 21 Ohio St.2d at 160. *See*, *generally*, *Hatch v. Lallo*, 9th Dist. No. 20642, 2002-Ohio-1376.

{¶15} In the underlying case, the trial court concluded that HPC's articles of incorporation established a voluntary association between HPC and the PCUSA and that they did not express the requisite intent to establish a trust benefiting the PCUSA. Those articles provided, in part:

> The purpose or purposes for which said corporation is formed are * * * To voluntarily associate together for divine worship and godly living, agreeably to the Holy Scriptures, submitting to the authority and form of government as set forth in the Constitution (as amended) of the United Presbyterian Church in the United States of America, and under the further authority of Eastminster Presbytery.

In the malpractice case, the trial court considered whether, in light of the law established by this Court in *Hudson Presbyterian Church*, this result stood independently from the 1981 Book of Order:

> Nothing in the articles or bylaws of HPC creates an express trust. The only way one could infer a trust is to couple HPC's voluntary association with Eastminster – as expressed in its articles of incorporation – to Eastminster's attempt to create a trust within the language in its Book of Order. Eastminster may have intended that a trust be established by HPC, but it is plain that it was HPC alone that could take action to place its property in trust for the benefit of Eastminster. The law clearly requires more than the bald assertion – by the beneficiary – that a trust exists. HPC would had to have in some manner indicated its intention to create an express trust for the benefit of Eastminster. Such is manifestly absent in this matter. HPC's articles of incorporation do not indicate such intent. Its bylaws do not indicate such intent. HPC is listed as the title owner of the real property with no indication that it owned the property as trustee for Eastminster.
>
> * * * The court in the underlying case found that no trust had been created because nothing in the HPC articles of incorporation could be considered the clear and convincing expression of HPC's intent to create an express trust. Because the court in the underlying case found that there was no expression of HPC's intent to create an express trust, Eastminster could not have won that case even if the Book of Order had been properly included in the summary judgment record.

{¶16} This Court agrees with the trial court's analysis. As an initial matter, we have searched the appellate file in vain for an affidavit or other means of authenticating the 1981 Book of Order, provided to the trial court as Exhibit 100, in *this* case. "The requirements of Civ.R. 56 are not onerous. While a trial court may consider evidentiary materials that do not comply with Civ.R. 56, this practice should not be viewed as license to disregard the requirements of Civ.R. 56 [and] [n]oncompliance should be the exception rather than the rule." *Cheriki v. Black River Industries, Inc.*, 9th Dist. No. 07CA009230, 2008-Ohio-2602, at ¶ 11. Neither party objected, however, and the trial court appears to have considered Exhibit 100. *See*, *generally*, *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 473 (1998) (noting that a trial court "may * * * [but] need not" consider evidence that does not comply with the evidentiary requirements of Civ.R. 56(C).). This Court, therefore, considers it as well. *See Cheriki* at ¶ 10.

{¶17} Applying the neutral principles of Ohio law to this case, this Court concludes that even had the 1981 Book of Order been provided in the underlying case in a form contemplated by Civ.R. 56, Eastminster would not have prevailed. As this Court noted in *Hudson Presbyterian Church*, an express trust arises by virtue of the manifested intent of the parties. *Id.*, 2009-Ohio-446, at ¶ 24. When a single party is both settlor and trustee, evidence of a conveyance is not required, but "words or acts must denote that [the settlor-trustee] is merely the legal title holder of the trust res and the equitable interest must lie with another." *Hatch*, 2002-Ohio-1376, at ¶ 11. A declaration by the settlor-trustee that the property is held in trust is sufficient. *See id*.

{¶18} The 1981 Book of Order indicates the PCUSA's intention to be the beneficiary of a trust:

> All property held by or for a particular church * * * whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association * * * is

> held in trust nevertheless for the use and benefit of The United Presbyterian Church in the United States of America.

Yet as the purported settlor-trustee, it is HPC's intention with respect to the property that is crucial. HPC did not indicate by words or acts that it intended by its voluntary association with the PCUSA to create a trust over its property. In the absence of a clear expression of HPC's intent, and in light of the fact that the trial court in the underlying case determined that HPC's affiliation with PCUSA was voluntary in nature, we agree that even had the 1981 Book of Order been properly before the court in the underlying case, the result would have been the same. Accordingly, Eastminster cannot demonstrate that negligence on the part of Stark & Knoll, if any, proximately caused the judgment against it in the underlying case. Eastminster's first assignment of error is overruled.

{¶19} Eastminster's second assignment of error is that that the First Amendment obligated the trial court in this case to give binding effect to the trust language in the 1981 Book of Order. In other words, this assignment of error reiterates Eastminster's argument that the 1981 Book of Order should have been determinative in the underlying case. As noted above, however, the neutral principles doctrine articulated by the United States Supreme Court and espoused by the Ohio Supreme Court does not require deference to ecclesiastical documents. Eastminster's second assignment of error is overruled.

III.

{¶20} Eastminster's assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

BELFANCE, P.J.
DICKINSON, J.
CONCUR

APPEARANCES:

TIMOTHY A. SHIMKO, Attorney at Law, for Appellant.

LAWRENCE A. SUTTER, Attorney at Law, JOHN C. LEACH, Attorney at Law, and STEPHANIE D. ADAMS, Attorney at Law, for Appellee.